UNITED STATES DISTRICT COURT **13 CIV 3537**
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
OFFSHORE EXPLORATION AND
PRODUCTION, LLC,

                          Plaintiff,

            -against-

MORGAN STANLEY PRIVATE BANK, N.A. as
successor to MORGAN STANLEY TRUST, N.A.,
ECOPETROL S.A., and KOREA NATIONAL
OIL CORPORATION,

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**COMPLAINT**

Plaintiff Offshore Exploration and Production, LLC ("Offshore"), by its attorneys DLA

Piper LLP (US), alleges as follows:

**SUMMARY OF THIS ACTION**

1.     This is an action for a judgment declaring the rights and obligations of the parties

to an Indemnification Escrow Agreement (the "Escrow Agreement") entered into by and among

plaintiff Offshore and defendants Morgan Stanley Trust, N.A. (together with its successor by

merger, Morgan Stanley Private Bank, N.A., the "Escrow Agent"), Ecopetrol S.A. ("Ecopetrol"),

and Korea National Oil Corporation ("KNOC").  A copy of the Escrow Agreement is annexed as

Exhibit A.

2.     The Escrow Agreement became effective on February 5, 2009.  On or about that

date, Ecopetrol and KNOC deposited $150 million with the Escrow Agent to be held in

accordance with the terms of the Escrow Agreement.  Under the Escrow Agreement, the

escrowed funds, which now amount to approximately $125 million (the "Escrow Amount"), may

be used to satisfy certain indemnification obligations of Offshore that may arise concerning the sale in 2009 of all the shares of one of Offshore's subsidiaries to Ecopetrol and KNOC. The Escrow Amount (in whole or in part) can be released only in accordance with the Escrow Agreement.

3.   A controversy has arisen concerning the release of approximately $75 million from the Escrow Amount to Ecopetrol and KNOC. Offshore contends that under the provisions of the Escrow Agreement the Escrow Agent is obligated to release the $75 million from the Escrow Amount to Ecopetrol and KNOC. Ecopetrol and KNOC have notified the Escrow Agent that they object to this release. The Escrow Agent has not released the funds.

4.   The controversy is actual, concrete, and substantial, and it admits of specific relief through a Court judgment or decree. It is a justiciable controversy.

5.   Offshore therefore seeks a judgment declaring that in accordance with the Escrow Agreement the Escrow Agent is mandated to release the $75 million at issue from the Escrow Amount to Ecopetrol and KNOC forthwith.

## THE PARTIES

6.   Offshore is a private investment holding company organized under the laws of Delaware. Its principal offices are in Houston, Texas.

7.   Morgan Stanley Private Bank, N.A., the Escrow Agent, is a national banking association organized under the laws of the United States. On information and belief, Morgan Stanley Trust, N.A., in 2011, merged with and into Morgan Stanley Private Bank, N.A., with Morgan Stanley Private Bank, N.A. as successor. Its main offices are in Purchase, New York.

8.   Ecopetrol is the national oil company of Colombia. It is organized under the laws of Colombia and its principal offices are in Colombia.

- 2 -

9.     KNOC is the national oil company of Korea. It is organized under the laws of Korea and its principal offices are in Korea.

## JURISDICTION

10.     This Court has jurisdiction under 28 U.S.C. § 1332(a)(3) because this is an action between citizens of different States and in which citizens or subjects of a foreign state are additional parties. The amount in controversy exceeds $75,000, exclusive of interest and costs. The citizenship of the Escrow Agent (a national banking association) is determined under 28 U.S.C. § 1348.

11.     In Section 12 of the Escrow Agreement the parties agreed that each party to the Escrow Agreement "irrevocably … consents to the jurisdiction of the courts located in the State of New York," and that each party "irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds."

12.     This Court has the power to grant the requested declaratory relief pursuant to 28 U.S.C. § 2201 because this is a case of actual controversy.

## BACKGROUND

### A.     The Escrow Agreement

13.     The Escrow Agreement was entered into in connection with the closing on a Stock Purchase Agreement (the "Stock Purchase Agreement") dated as of December 29, 2008, between Offshore (as "Seller") and Ecopetrol and KNOC (together, "Purchaser").

14.     Under the Stock Purchase Agreement, Seller (Offshore) sold all the issued and outstanding shares of Offshore International Group, Inc. to Purchaser (Ecopetrol and KNOC). The sale and purchase closed on February 5, 2009.

15.     Seller and Purchaser agreed that the Escrow Amount, which was part of the deferred purchase price for the shares sold by Seller, would be deposited in escrow subject to the terms of the Escrow Agreement.

16.     Under the procedures set forth in the Escrow Agreement, the Escrow Amount (or a portion of it) may be released either to Purchaser (Ecopetrol and KNOC) to satisfy particular indemnification obligations of Seller (Offshore), or to Seller. The Escrow Agent is required to hold or release the Escrow Amount (in whole or in part), in accordance with the provisions of the Escrow Agreement.

17.     In accordance with Section 3 of the Escrow Agreement, Purchaser begins the process for release of funds to satisfy an indemnification obligation of Seller by delivering to the Escrow Agent a "Purchaser's Indemnity Certificate." A Purchaser's Indemnity Certificate states that Purchaser is entitled to indemnification (an "Indemnification Item"), states the aggregate amount of such Indemnification Item, and specifies the nature and amount of each individual Indemnification Item. When the Escrow Agent receives a Purchaser's Indemnity Certificate, it promptly delivers it to Seller.

18.     If Seller objects to any amount claimed in any Purchaser's Indemnity Certificate, Seller has 30 days to deliver to the Escrow Agent a "Seller's Indemnity Certificate" specifying each such amount to which Seller objects and specifying in reasonable detail the nature and basis for each objection.

19.     The Escrow Agreement provides mandatorily that in the event Seller fails to deliver to the Escrow Agent a Seller's Indemnity Certificate objecting to the amount claimed in a Purchaser's Indemnity Certificate, the Escrow Agent "shall promptly thereafter transfer to Purchaser an amount of the Escrow Amount equal to the full amount claimed in the Purchaser's Indemnity Certificate."

- 4 -

20.     The Escrow Agreement further provides, mandatorily, that if the Seller delivers a

Seller's Indemnity Certificate to the Escrow Agent objecting to some of the amount claimed with

respect to any Indemnification Item specified in a Purchaser's Indemnity Certificate, but does not

object to all such amounts, then the Escrow Agent "shall promptly thereafter transfer to

Purchaser funds from the Escrow Amount in an amount equal to the amount claimed in the

Purchaser's Indemnity Certificate, but not contested in Seller's Indemnity Certificate."

21.     The Escrow Agreement therefore contemplates that the Escrow Agent will release

to Purchaser from the Escrow Amount sums claimed by Purchaser in one or more Purchaser's

Indemnity Certificates provided Seller does not object to the release of those funds. That is now

the case in respect of the $75,308,179.03 that Seller has directed the Escrow Agent to release

from the Escrow Amount.

**B.      The Controversy Under the Escrow Agreement Concerning the
         Release of the Funds from the Escrow Amount**

22.     On May 2, 2013, Offshore delivered to the Escrow Agent (with copies to

Ecopetrol and KNOC) a notice (the "Notice to Release Funds," annexed as Exhibit B) stating

that the Escrow Agent should release the $75,308,179.03 in question from the Escrow Amount to

Ecopetrol and KNOC:

> We write to inform the Escrow Agent that Seller withdraws its
> objections to the release of funds from the Escrow Amount to
> reimburse Purchaser for certain Value Added Taxes ("VAT") paid
> by Savia Peru S.A. ("Savia"), and to instruct the Escrow Agent to
> release promptly to Purchaser from the Escrow Amount the sum of
> $75,308,179.03, to reimburse Purchaser for the VAT paid by
> Savia.

23.     By letter to the Escrow Agent dated May 10, 2013 (copy annexed as Exhibit C),

Purchaser has objected to the release of the $75,308,179.03 in accordance with Offshore's Notice

to Release Funds, for reasons that are meritless under the Escrow Agreement.

24.     By letter to the Escrow Agent dated May 21, 2013 (copy annexed as Exhibit D),

Seller has responded to the objections raised in Purchaser's letter dated May 10, 2013, explained

why Purchaser's objections are meritless, and again restated Seller's directive that the Escrow

Agent cause an immediate release of $75,304,179.03 to Purchaser.

25.     To date, the Escrow Agent has not released the $75,304,179.03 to Purchaser

(Ecopetrol and KNOC) as requested by Offshore, nor has the Escrow Agent provided any expla-

nation for its failure to release those funds as directed by Offshore.

26.     Section 5(b) of the Escrow Agreement provides that in the event the Escrow

Agent is uncertain as to its duties or rights under the Escrow Agreement then it shall be entitled

to refrain from taking any action until it has been directed otherwise by (among other things) a

final order or judgment of a court of competent jurisdiction.

27.     This Court is a court of competent jurisdiction, and Offshore seeks a final order or

judgment in accordance with Section 5(b) of the Escrow Agreement directing the Escrow Agent

to release the $75,308,179.03 in question from the Escrow Amount to Purchaser.

## CAUSE OF ACTION

### (Declaratory Judgment on a Justiciable Issue of Law)

28.     Plaintiff repeats the allegations in paragraphs 1-27 of the Complaint.

29.     There is an actual justiciable controversy between Plaintiff and Defendants under

the Escrow Agreement concerning the release of the $75,308,179.03 from the Escrow Amount.

30.     That controversy is definite, concrete, and substantial, and it admits of specific

relief through a Court order or judgment. This Court's order or judgment declaring the rights

and obligations of the Escrow Agent under the Escrow Agreement will have an immediate and

practical effect on the Escrow Agent's actions.

- 6 -

31.    Plaintiff is therefore entitled to a declaration that under the Escrow Agreement,

the Escrow Agent shall release $75,308,179.03 from the Escrow Amount to Purchaser forthwith.

WHEREFORE, Plaintiff demands judgment against Defendants:

(a)    Declaring that under the Escrow Agreement, the Escrow Agent shall cause an

immediate release of $75,308,179.03 to Purchaser;

(b)    Granting or awarding such other or further relief as may be warranted by the

Escrow Agreement; and

(c)    Granting such other and further relief as the Court may determine is just and

proper.

Dated:  May 24, 2013

DLA PIPER LLP (US)


By:      5m/h Jln —
_____

Stanley McDermott III
Camilo Cardozo
Michael R. Hepworth

1251 Avenue of the Americas
New York, New York  10020-1104
(212) 335-4500

*Attorneys for Plaintiff Offshore Exploration
and Production LLC*

- 7 -

# Exhibit

# A

## INDEMNIFICATION ESCROW AGREEMENT

This escrow agreement (this *"Indemnification Escrow Agreement"*) dated as of February 5, 2009 (the *"Effective Date"*) is entered into by and among Offshore Exploration and Production, LLC, a limited liability company organized under the laws of Delaware (*"Seller"*), Korea National Oil Corporation (*"KNOC"*) and Ecopetrol S.A. (*"Ecopetrol"*, together with KNOC, or individually as the context indicates, *"Purchaser"*) and Morgan Stanley Trust, N.A. as escrow agent hereunder (the *"Escrow Agent"*, and together with Purchaser and Seller, the *"Parties"*, each a *"Party"*). Capitalized terms used but not defined herein shall have the respective meanings set forth in the Stock Purchase Agreement (defined below).

WHEREAS, Purchaser and Seller are parties to that certain Stock Purchase Agreement dated as of December 29, 2008 (the *"Stock Purchase Agreement"*), pursuant to which Purchaser has agreed to acquire from Seller all of the issued and outstanding shares of Offshore International Group, Inc. for certain cash consideration (the *"Cash Consideration"*).

WHEREAS, Purchaser and Seller have agreed to deposit in escrow with the Escrow Agent a portion of the Cash Consideration equal to One Hundred Fifty Million Dollars ($150,000,000) (the *"Escrow Amount"*), and Purchaser and Seller wish such deposit to be subject to the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the Parties hereto agree as follows:

1.     Appointment.  Purchaser and Seller hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

2.     Escrow Amount.  Pursuant to Section 2.3(b)(i) of the Stock Purchase Agreement, Purchaser is depositing with the Escrow Agent the Escrow Amount, to be held by the Escrow Agent in accordance with the terms hereof. It is hereby expressly stipulated and agreed that all interest or other income on the Escrow Amount shall belong to Seller and not constitute a part of the Escrow Amount. Seller shall be entitled to a quarterly distribution of all interest earned on the Escrow Amount (and not previously distributed), and such interest shall promptly, without any written instruction, be paid over to Seller's account specified in Schedule 1, or otherwise delivered to Seller in accordance with written instructions of Seller. Periodic statements will be provided to Purchaser and Seller reflecting the amount of Escrow Amount held under this Indemnification Escrow Agreement. Purchaser and Seller, upon written request, will receive a statement of transaction details upon completion of any distribution of the Escrow Amount without any additional cost.

3.     Distribution in Respect of Seller's Indemnities under the Stock Purchase Agreement.  If any Purchaser delivers to the Escrow Agent a certificate of such Purchaser, executed by an authorized officer of such Purchaser (a *"Purchaser's Indemnity Certificate"*), which Purchaser's Indemnity Certificate shall:

1

(a)     state that such Purchaser is entitled to indemnification under Section 7.4 or Article 8 of the Stock Purchase Agreement (an *"Indemnification Item"*);

(b)     state the aggregate amount of such Indemnification Item; and

(c)     specify the nature and amount of each individual Indemnification Item,

then the Escrow Agent shall, promptly upon receipt of such Purchaser's Indemnity Certificate, deliver a copy of such Purchaser's Indemnity Certificate via facsimile to Seller at the address provided for in Schedule 1 hereto (*"Schedule 1"*).

If Seller objects to any amount claimed in connection with any Indemnification Item specified in any Purchaser's Indemnity Certificate, Seller shall, within 30 days after delivery by the Escrow Agent to Seller of such Purchaser's Indemnity Certificate, deliver to the Escrow Agent and Purchaser a certificate (a *"Seller's Indemnity Certificate"*), (i) specifying each such amount to which Seller objects and (ii) specifying in reasonable detail the nature and basis for each such objection. Promptly upon receipt of Seller's Indemnity Certificate the Escrow Agent shall deliver a copy of such Seller's Indemnity Certificate to Purchaser. If Seller fails to deliver to the Escrow Agent a Seller's Indemnity Certificate objecting to the amount claimed with respect to an Indemnification Item within 30 days after delivery to Seller of a Purchaser's Indemnity Certificate specifying such Indemnification Item, the Escrow Agent shall promptly thereafter transfer to Purchaser an amount of Escrow Amount equal to the full amount claimed in the Purchaser's Indemnity Certificate.

If the Escrow Agent receives, within 30 days after delivery to Seller of a Purchaser's Indemnity Certificate, a Seller's Indemnity Certificate objecting to the amount claimed with respect to any Indemnification Item specified in such Purchaser's Indemnity Certificate, the amount so objected to shall be held by the Escrow Agent. The Escrow Agent shall transfer to Purchaser funds from the Escrow Amount in an amount equal to the amount claimed in the Purchaser's Indemnity Certificate, but not contested in Seller' Indemnity Certificate, and shall not release additional funds from the Escrow Amount (other than quarterly distributions of interest in accordance with Section 2 hereof) except in accordance with either (i) written instructions executed both by an authorized officer of Purchaser and by an authorized officer of Seller (*"Joint Instructions"*), or (ii) a certificate delivered by any Purchaser to the Escrow Agent, executed by an authorized officer of such Purchaser (a *"Final Award Certificate"*), which certificate shall (A) state that, of the amounts contested in Seller's Indemnity Certificate, such Purchaser is entitled to indemnification under Section 7.4 or Article 8 of the Stock Purchase Agreement, (B) state the aggregate amount of such indemnification to which such Purchaser is entitled, (C) have attached thereto a true and complete copy of the Arbitral Award (as defined below) confirming that such Purchaser is entitled to such amount of indemnification under Section 7.4 or Article 8 of the Stock Purchase Agreement and (D) have attached a copy of the return receipt evidencing that a copy of the Final Award Certificate (excluding item (D)) was delivered to Seller by certified mail to the address specified in Schedule 1; promptly after which time (but in no event sooner than 3 days after the Escrow Agent's receipt of the Final Award Certificate), the Escrow Agent shall transfer to Purchaser funds from the Escrow Amount in an amount equal to the full amount set forth in the joint instructions or the certificate, as the case may be. An *"Arbitral Award"* means the final decision of an arbitral tribunal pursuant to Section 10.7 of the Stock Purchase Agreement.

WEST\21648676.1

If any Purchaser delivers to the Escrow Agent a certificate of such Purchaser, executed by an authorized officer of such Purchaser (a "***Purchaser's Release Certificate***"), which Purchaser's Release Certificate states that an Indemnification Item, in a specific amount, was satisfied by Seller independent of this Indemnification Escrow Agreement, then the Escrow Agent shall promptly upon receipt of such Purchaser's Release Certificate transfer to Seller funds from the Escrow Amount in an amount equal to the full amount identified in Purchaser's Release Certificate.

All disbursements of any portion of the Escrow Amount pursuant to this Indemnification Escrow Agreement shall be made by wire transfer of immediately available U.S. federal funds to the accounts designated on Schedule 1, as applicable, or otherwise timely designated in writing by the Party to whom the funds are due.

4.    Escrow Termination Date.    The Escrow Amount, or any portions thereof remaining after earlier distributions pursuant to the terms hereof or of the Stock Purchase Agreement in accordance with the procedures specified therein, shall be held in escrow until the date that is the second anniversary of the Effective Date (the "***Escrow Termination Date***"). On the first Business Day (hereinafter defined) following the Escrow Termination Date, the Escrow Agent shall distribute to the Seller at the account of Seller specified in Schedule 1, all funds remaining in the Escrow Account except for such amounts set forth in a valid Purchaser's Indemnity Certificate received by the Escrow Agent on or before the Escrow Termination Date, that have not been resolved in accordance with Section 3 of this Indemnification Escrow Agreement (the "***Unresolved Amount***"), and with respect to the Unresolved Amount, the Escrow Termination Date shall be extended and the Escrow Agent shall continue to hold the Unresolved Amount until the payment thereof is resolved in accordance with Section 3 of this Indemnification Escrow Agreement. At the Escrow Termination Date, the Escrow Agent, without necessity of any further instructions shall distribute all interest and other earnings on the Escrow Amount to Seller, at the account of Seller specified in Schedule 1.

5.    Escrow Agent.

(a)    The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. This Indemnification Escrow Agreement sets forth all obligations of the Escrow Agent, and no additional obligations shall be implied from the terms of this Agreement or any other agreement, instrument or document. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Indemnification Escrow Agreement.

(b)    The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document. The Escrow Agent shall have no duty to solicit any payments which may be due it or in connection with the Escrow Amount. The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the cause of any loss to Purchaser or Seller. The Escrow Agent may execute any of

its powers and perform any of its duties hereunder directly or through agents or attorneys (provided that the Escrow Agent shall be liable to the extent that a court of competent jurisdiction determines that any such agent's or attorney's gross negligence or willful misconduct was the cause of any loss to Purchaser or Seller) and may consult with counsel, accountants and other skilled persons to be selected and retained by it. The Escrow Agent shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons. In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from any Party hereto which, in its opinion, conflict with any of the provisions of this Indemnification Escrow Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be directed otherwise in writing by all of the other Parties hereto, by a final order or judgment of a court of competent jurisdiction or, subject to Section 3 of this Indemnification Escrow Agreement, a final decision of an arbitral tribunal pursuant to Section 10.7 of the Stock Purchase Agreement.

(c)     The Escrow Agent shall invest the funds held in escrow through an account managed by the Escrow Agent or an affiliate of the Escrow Agent under the supervision of Drew Zager, Managing Director of Morgan Stanley & Company, Inc. or any other person designated jointly by Seller and Purchaser. The funds held in such account shall be held in (i) readily marketable direct obligations of the Government of the United States or any agency or instrumentality thereof or readily marketable obligations unconditionally guaranteed by the full faith and credit of the Government of the United States, provided that the Escrow Agent may enter into short term repurchase agreements with respect to the obligations described in this subsection (i) if such obligations are provided as the sole collateral in such short term repurchase agreements, (ii) insured certificates of deposit of, or time deposits with, any commercial bank that is a member of the Federal Reserve System and which issues (or the parent of which issues) commercial paper rated as described in clause (iii), is organized under the laws of the United States or any State thereof and has combined capital and surplus of at least $1 billion or (iii) commercial paper in an aggregate amount of no more than $1,000,000 per issuer outstanding at any time, issued by any corporation organized under the laws of any State of the United States, rated at least "Prime 1" (or the then equivalent grade) by Moody's Investors Services, Inc. or "A 1" (or the then equivalent grade) by Standard & Poors, Inc.

(d)     The rights of the Escrow Agent under this Section 5 of the Indemnification Escrow Agreement are cumulative of all other rights which it may have by law or otherwise. Anything in this Indemnification Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

6.     Succession. The Escrow Agent may resign and be discharged from its duties or obligations hereunder by giving 30 calendar days advance notice in writing of such resignation to the other Parties hereto specifying a date when such resignation shall take effect. On the effective date of such resignation, the Escrow Agent shall deliver this Indemnification Escrow

Agreement together with any and all related documents or instruments to any successor Escrow Agent (the "***Successor Escrow Agent***") agreeable to Purchaser and Seller, who shall assume all of the rights, duties and obligations of the Escrow Agent, subject to the terms of this Indemnification Escrow Agreement. If a Successor Escrow Agent has not been appointed prior to the expiration of 30 calendar days following the date of the notice of such resignation, the then acting Escrow Agent may petition any court of competent jurisdiction for the appointment of a Successor Escrow Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all Parties to this Indemnification Escrow Agreement. The Escrow Agent shall have the right to withhold an amount equal to any amount due and owing to the Escrow Agent from Seller, plus one-half of any costs and expenses the Escrow Agent shall reasonably believe may be incurred by the Escrow Agent in connection with the termination of this Indemnification Escrow Agreement or the resignation of the Escrow Agent; *provided, however*, that such termination or resignation shall not relieve the Escrow Agent from any loss, liability or expense (including the fees and expenses of in house or outside counsel) that result from the gross negligence or willful misconduct of the Escrow Agent or result from following an instruction or direction from Seller or Purchaser, where following such instruction or direction is expressly forbidden by the terms hereof. Any corporation or association into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all the escrow business of the Escrow Agent's corporate trust line of business may be transferred, shall be the Escrow Agent under this Indemnification Escrow Agreement without further act.

7.     Fees. Purchaser and Seller each agree, severally and not jointly, to (i) pay the Escrow Agent upon execution of this Indemnification Escrow Agreement and from time to time thereafter one-half of the reasonable compensation for the services to be rendered hereunder, which unless otherwise agreed in writing shall be as described in Schedule 1 attached hereto, and (ii) pay or reimburse the Escrow Agent upon request for one-half of all expenses, disbursements and advances, including reasonable attorney's fees and expenses, incurred or made by it in connection with the preparation, execution, performance, delivery, modification and termination of this Indemnification Escrow Agreement.

8.     Indemnity. Purchaser and Seller shall, severally and not jointly, indemnify, defend and save harmless the Escrow Agent, its affiliates, and the directors, officers, agents and employees of the Escrow Agent and/or its affiliates (the "***Indemnitees***") from all loss, liability or expense (including the reasonable fees and expenses of outside counsel) arising out of or in connection with (i) the Escrow Agent's execution and performance of this Indemnification Escrow Agreement (including, but not limited to, the Escrow Agent's delivery of notices contemplated under Section 3 of this Indemnification Escrow Agreement) except in the case of any Indemnitee to the extent that such loss, liability or expense is due to the gross negligence or willful misconduct of such Indemnitee, or (ii) its following any instructions or other directions from Purchaser or Seller furnished to it hereunder and reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof. The Parties hereto acknowledge that the foregoing indemnities shall survive the resignation or removal of the Escrow Agent or the termination of this Indemnification Escrow Agreement. The Parties hereby grant the Escrow Agent a lien on, right of set-off against and security interest in

the Escrow Amount for the payment of any claim against Seller for indemnification, compensation, expenses and amounts due hereunder.

9.   Account Opening Information/TINs.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

For accounts opened in the US:

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. When an account is opened, the Escrow Agent will ask for information that will allow it to identify relevant parties.

For non-US accounts:

To help in the fight against the funding of terrorism and money laundering activities the Escrow Agent is required along with all financial institutions to obtain, verify, and record information that identifies each person who opens an account. When Purchaser and Seller open an account, the Escrow Agent will ask for information that will allow it to identify each Party.

TINs:

Purchaser and Seller represent that its correct Taxpayer Identification Number ("*TIN*") assigned by the Internal Revenue Service ("*IRS*") or any other taxing authority is set forth in Schedule 1. Upon execution of this Agreement, Purchaser and Seller shall provide the Escrow Agent with a fully executed W-8 or W-9 IRS form, which shall include Purchaser's and Seller's TIN. In addition, all income earned on the Escrow Amount under the Indemnification Escrow Agreement shall promptly be paid to Seller in accordance with this Indemnification Escrow Agreement to the account set forth in Schedule 1 and reported by Seller to the Internal Revenue Service or any other taxing authority. The Escrow Agent shall report and, as required withhold any taxes as it determines may be required by any law or regulation in effect at the time of the distribution. In the event that any income remains undistributed to Seller at the end of any calendar year, the Escrow Agent shall report to the Internal Revenue Service or such other authority such income as it deems appropriate or as required by any applicable law or regulation or, to the extent consistent therewith, as directed in writing by Seller. In addition, the Escrow Agent shall withhold any taxes it deems appropriate and shall remit such taxes to the appropriate authorities.

10.   Notices. All communications hereunder shall be in writing and shall be deemed to be duly given and received:

(a)   upon delivery if delivered personally or upon confirmed transmittal if by facsimile;

(b)   on the next Business Day if sent by overnight courier; or

(c)   four (4) Business Days after mailing if mailed by prepaid registered mail, return receipt requested, to the appropriate notice address set forth on Schedule 1 or at

such other address as any Party hereto may have furnished to the other Parties in writing by registered mail, return receipt requested.

Notwithstanding the above, in the case of communications delivered to the Escrow Agent pursuant to (a) and (b) of this Section 10, such communications shall be deemed to have been given on the date received by the Escrow Agent. In the event that the Escrow Agent, in its sole discretion, shall determine that an emergency exists, the Escrow Agent may use such other means of communication as the Escrow Agent deems appropriate. "*Business Day*" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent located at the notice address set forth on Schedule 1 is authorized or required by law or executive order to remain closed.

11.   Security Procedures. In the event funds transfer instructions are given (other than in writing at the time of execution of this Indemnification Escrow Agreement, as indicated in Schedule 1 attached hereto), whether in writing or by telecopier, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on Schedule 2 hereto ("*Schedule 2*"), and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. Each funds transfer instruction shall be executed by an authorized signatory, a list of such authorized signatories is set forth on Schedule 2. The undersigned is authorized to certify that the signatories on Schedule 2 are authorized signatories. The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by Purchaser or Seller to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank. The Escrow Agent may apply any of the Escrow Amount for any payment order it executes in accordance with this Indemnification Escrow Agreement using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. The Parties to this Indemnification Escrow Agreement acknowledge that these security procedures are commercially reasonable.

12.   Miscellaneous. The provisions of this Indemnification Escrow Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by all of the Parties hereto. Neither this Indemnification Escrow Agreement nor any right or interest hereunder may be assigned in whole or in part by any Party, except as provided in Section 6, without the prior consent of the other Parties. This Indemnification Escrow Agreement shall be governed by and construed under the laws of the State of New York. Each Party hereto irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the courts located in the State of New York. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Indemnification Escrow Agreement. No Party to this Indemnification Escrow Agreement is liable to any other Party for losses due to, or if it is unable to perform its obligations under the terms of this Indemnification Escrow Agreement because of, acts of God, fire, floods, strikes, equipment or transmission failure, or other causes reasonably beyond its control. This Indemnification Escrow Agreement may be executed and delivered (including by facsimile transmission or portable document format (.pdf)) in one or more

counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Receipt of the Escrow Amount shall be confirmed by the Escrow Agent as soon as practicable by account statement, and any discrepancies in any such account statement shall be noted by Seller to the Escrow Agent within 30 calendar days after receipt thereof.  Failure to inform the Escrow Agent in writing of any discrepancies in any such account statement within such 30-day period shall conclusively be deemed confirmation of such account statement in its entirety.  In the event of any discrepancy or inconsistency between the provisions of this Indemnification Escrow Agreement and the provisions of the Stock Purchase Agreement, the provisions hereof shall prevail and be deemed to reflect the intent and understanding of the Parties hereto.

*[Remainder of Page Intentionally Left Blank]*

ST

IN WITNESS WHEREOF, the Parties hereto have executed this Indemnification Escrow Agreement as of the date set forth in Schedule I.

**ESCROW AGENT:**

MORGAN STANLEY TRUST, N.A.

By: _____
Name: _James J. Coyle_
Title: _Vice President_

**PURCHASER:**

KOREA NATIONAL OIL CORPORATION

By: _____
Name: _____
Title: _____

ECOPETROL, S.A.

By: _____
Name: _____
Title: _____

**SELLER**

OFFSHORE EXPLORATION AND PRODUCTION, LLC

By: _____
Name: _____
Title: _____

[Signature Page to Indemnification Escrow Agreement]

IN WITNESS WHEREOF, the Parties hereto have executed this Indemnification Escrow Agreement as of the date set forth in Schedule 1.

**ESCROW AGENT**:

MORGAN STANLEY TRUST, N.A.

By: _____
Name: _____
Title: _____

**PURCHASER**:

KOREA NATIONAL OIL CORPORATION

By: _____
Name: _____Eugene Synn_____
Title: _____Vice President_____

ECOPETROL, S.A.

By: _____
Name: _____Javier Gutierrez P_____
Title: _____President_____

**SELLER**

OFFSHORE EXPLORATION AND PRODUCTION, LLC

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the Parties hereto have executed this Indemnification Escrow Agreement as of the date set forth in Schedule 1.

**ESCROW AGENT:**

MORGAN STANLEY TRUST, N.A.

By:_____
Name:_____
Title:_____

**PURCHASER:**

KOREA NATIONAL OIL CORPORATION

By:_____
Name:_____
Title:_____

ECOPETROL, S.A.

By:_____
Name:_____
Title:_____

**SELLER**

OFFSHORE EXPLORATION AND
PRODUCTION, LLC

By:_____
Name: William Kallop
Title: President

[Signature Page to Indemnification Escrow Agreement]

<u>**Schedule 1**</u>

<u>Effective Date:</u> *February 5*, 2009

<u>Escrow Amount:</u> $100,000,000

<u>Investment:</u>   As set forth in Section 5(c) of the Indemnification Escrow Agreement.

<u>Name of Purchaser:</u> KOREA NATIONAL OIL CORPORATION, ECOPETROL, S.A.

<u>Purchaser Notice Addresses:</u> Korea National Oil Corporation
1588-14, Gwanyang-dong, Dongan-gu
Anyang, Gyeonggi-do, Korea 431-711
Attention: Eugene Synn
Telephone: +82-31-380-2942
Telecopy: +82-31-384-1275

Ecopetrol S.A.
Calle 37 No. 8-43
Piso 7
Edificio Guadalupe
Bogotá, D.C. - Colombia
Attention: Maria Victoria Riaño
Telephone: +571.234.44.13 or +571.234.40.39
Telecopy: +57.1.234.47.67

With copies to:   (which shall not constitute notice)

Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston, Texas 77002
Attention: Jerry L. Metcalf, Esq.
Telephone: 713-951-5828
Telecopy: 832-397-8127

Ecopetrol S.A.
Calle 37 No. 8-43
Piso 3
Edificio Guadalupe
Bogotá, D.C. - Colombia
Attention: Alejandro Pinzon
Telephone: +571.234.5378
Telecopy: +57.1.234.5628

<u>Purchaser TIN:</u> [_____]

Schedule 1-1

WEST\21648676.1

Purchaser Wiring Instructions:     [_____]
                                ABA [_____]
                                [_____]
                                Account #[_____]

Name of Seller:  OFFSHORE EXPLORATION AND PRODUCTION, LLC

Seller Notice Address:           Offshore Exploration and Production, LLC
                                13430 Northwest Freeway (Hwy 290), Suite 800
                                Houston, TX 77040
                                Attention:     William M. Kallop
                                Telephone:    (713) 622-3492
                                Telecopy:     (713) 622-3474

                                With a concurrent copy (which shall not constitute notice) to:

                                DLA Piper US LLP
                                Chase Tower
                                600 Travis Street, Suite 1700
                                Houston, Texas  77002-3009
                                Attention:     Jack J. Langlois
                                Telephone:    (713) 425-8419
                                Telecopy:     (713) 300-6021

Seller Wiring Instructions:        [_____]
                                  ABA [_____]
                                  [_____]
                                  Account #[_____]

Escrow Agent Notice Address:     Morgan Stanley Trust, N.A.
                                Attn:  Atara Aharonovitz
                                Harborside Financial Center
                                Plaza Two, 2nd Floor
                                Jersey City, NJ 07311
                                Tel: 201-830-6159
                                Fax: 201-830-6308

Escrow Agent's compensation:  For its services hereunder, the Escrow Agent shall receive annual fees for administration (the "*Administrative Fee*") and investment management (the "*Management Fee*", and together with the Administrative Fee, the "*Escrow Fees*"), as calculated and paid in accordance with this paragraph.  The Escrow Agent shall be paid the Administrative Fee and Management Fee once per year for each year (which, for the purposes of this section, shall be deemed to be 365 days) that any amount of the Escrow Amount remains

WEST\21648676.1

deposited with the Escrow Agent pursuant to this Agreement (each such year, a "*Deposit Year*"). The Administrative Fee shall be an amount equal to 0.03% of the initially deposited Escrow Amount, or $30,000, for each Deposit Year. The Management Fee shall be an amount equal to 0.125% of the Average Deposited Escrow Amount for each Deposit Year. The Escrow Fees shall be pro-rated for partial Deposit Years by the number of days in such Deposit Year. For purposes of this Agreement, "*Average Deposited Escrow Amount*" means, for a period of days, an amount equal to (i) the sum of the Daily Closing Balances for each day in such period, divided by (ii) the number of days in such period. The term "*Daily Closing Balance*" means, for any day, the amount of the Escrow Amount in deposit with the Escrow Agent pursuant to this Agreement at the close of business for such day.

- Billing Procedure of Escrow Fees:

The Escrow Fees shall be billed by written invoices ("*Invoices*") in the following proportions:

| | |
|---|---|
| 50% of the Escrow Fees | Seller |
| 25% of the Escrow Fees | KNOC |
| 25% of the Escrow Fees | Ecopetrol |

Invoices shall be sent to the notice addresses for Seller and Purchaser set forth in this Schedule 1 (unless Seller or Purchaser furnish prior written notice of a different address to the Escrow Agent). Invoices shall be sent to the applicable Parties within thirty (30) days of the end of each Deposit Year (or partial Deposit Year if the Escrow Amount is fully withdrawn on the last day of such partial Deposit Year); *provided, however,* the Escrow Fees for the first year (counted from and including the Effective Date) shall be billed in advance within thirty (30) days of the Effective Date.

Schedule 1-3

WEST\21648676.1

Schedule 2

Telephone Number(s) for Call-Backs and
Person(s) Designated to Instruct and Confirm Funds Transfer Instructions

If to Purchaser:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| Eugene Synn | 82-31-380-2942 | |
| Maria Victoria Riaño | 571.234.44.13 or | |
| | +571.234.40.39 | |

If to Seller:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| Michael Lance | (713) 782-1075 | |
| William M. Kallop | (713) 622-3492 | |

Schedule 2

Telephone Number(s) for Call-Backs and
Person(s) Designated to Instruct and Confirm Funds Transfer Instructions

If to Purchaser:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| Eugene Synn | 82-31-380-2942 | |
| Maria Victoria Riaño | 571.234.44.13 or | _____ |
| | +571.234.40.39 | _____ |

If to Seller:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| Michael Lance | (713) 782-1075 | |
| William M. Kallop | (713) 622-3492 | |

Exhibit

B

**Offshore Exploration and Production, LLC
13430 Northwest Freeway (Hwy 290), Suite 800
Houston, TX 77040**

May 2, 2013

Morgan Stanley Trust, N.A.
Attn: Brian Crossan
Harborside Financial Center
Plaza Two, 2nd Floor
Jersey City, NJ 07311
Fax: 201-830-6308
201 633-4278

**Re:   Purchaser's Indemnification Claims No. 9, 10 and 14
         VAT Tax Credit Contingency for Tax Years 2002, 2004, 2005, 2006 and 2007
         Consent to Release from Indemnification Escrow Amount**

Ladies and Gentlemen,

Reference is made to (i) the Stock Purchase Agreement dated effective as of December 29, 2008 by and among Offshore Exploration and Production, LLC ("**Seller**"), Korea National Oil Company ("**KNOC**") and Ecopetrol S.A. ("**Ecopetrol**", and together with KNOC, "**Purchaser**") (as amended, the "**Agreement**"); and (ii) the Indemnification Escrow Agreement (the "**Escrow Agreement**") dated February 5, 2009 by and among Seller, Purchaser and Morgan Stanley Trust, N.A. (the "**Escrow Agent**").[1]

**We write to inform the Escrow Agent that Seller withdraws its objections to the release of funds from the Escrow Amount to reimburse Purchaser for certain Value Added Taxes ("VAT") paid by Savia Peru S.A. ("Savia"), and to instruct the Escrow Agent to release promptly to Purchaser from the Escrow Amount the sum of $75,308,179.03, to reimburse Purchaser for the VAT paid by Savia.**

**The Purchaser's Claim Notices and Indemnity Certificates Seeking Reimbursement of the VAT Paid by Savia**

Purchaser has filed claims against the Escrow Amount seeking reimbursement for certain VAT paid by Savia for tax years 2001 through 2007. In connection with those claims, Purchaser has previously filed with the Escrow Agent a number of claim notices together with corresponding Purchaser Indemnity Certificates. Specifically, the Purchaser filed:

1.    Purchaser's Indemnification Claim No. 9, with its corresponding Purchaser Indemnity Certificate (both dated February 25, 2010, and both updated on January 28, 2011);

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement or the Escrow Agreement, as applicable.

2.     Purchaser's Indemnification Claim No. 10, with its corresponding Purchaser Indemnity Certificate (both dated October 1, 2010); and

3.     Purchaser's Indemnification Claim No. 14, with its corresponding Purchaser Indemnity Certificate (both dated January 28, 2011) (collectively, the "**VAT Indemnity Certificates**").

The VAT Indemnity Certificates, however, were based on estimated VAT liabilities and therefore do not fully reflect the actual amounts ultimately paid by Savia for VAT liabilities and for which Purchaser has not been reimbursed. That actual amount equals **$75,308,179.03.**

### The Seller's Indemnity Certificates Opposing the Release of Funds to Reimburse Purchaser for the VAT Paid by Savia

Pursuant to Section 3 of the Escrow Agreement, Seller filed its own indemnity certificates with the Escrow Agent, objecting to Purchaser's VAT Indemnity Certificates and opposing the release of funds to reimburse Purchaser for the VAT paid by Savia. Specifically, Seller filed:

1.     Seller's Indemnity Certificate No. 9 (dated March 26, 2010);

2.     Seller's Indemnity Certificate No. 10 (dated October 29, 2010); and

3.     Seller's Indemnity Certificate No. 14 (dated February 25, 2011).

### Seller Withdraws its Objections to the Release of Funds to Reimburse Purchaser for the VAT Paid by Savia

Seller hereby informs the Escrow Agent that it no longer objects to the release of funds from the Escrow Amount to reimburse Purchaser for the VAT paid by Savia. As a result, Seller hereby withdraws the Seller's Indemnity Certificates objecting to Purchaser's VAT Indemnity Certificates, to the extent those certificates seek reimbursement of the VAT paid by Savia. Seller, however, does not withdraw that part of its Seller's Indemnity Certificate No. 9 to the extent that certificate concerns VAT liabilities for tax years 2001 and 2003 because Seller has already reimbursed Purchaser for such amounts.

Accordingly, **Seller hereby directs the Escrow Agent to cause an immediate release of $75,308,179.03 to Purchaser. The Seller's withdrawal of its objections allows the Escrow Agent to act without further instructions.** Nevertheless, Seller has enclosed an executed copy of its Instructions to the extent necessary to facilitate the release of those funds. We trust that you will promptly proceed accordingly.

Except for the matters expressly addressed herein, this letter shall not be construed as an admission of any fact or circumstance. Seller reserves the right to amend or supplement this letter as new facts are learned or disclosed. If you have any questions regarding the content of this letter, please reply to the undersigned in accordance with the Escrow Agreement.

*[Signature page follows]*

Sincerely,

William Kallop
President, Offshore Exploration and Production, LLC


cc:

Korea National Oil Corporation
1588-14 Gwanyang-dong, Dongan-gu
Anyang, Gyeonggi-do, Korea 431-711
Attention: Jae Soo Choi
Telecopy: +82-31-385-2476

Ecopetrol S.A.
Calle 37 No. 8-43
Piso 7
Edificio Guadalupe
Bogota, D.C. -- Colombia
Attention: Maria Victoria Riaño and/or Oscar Bravo
Telecopy: +57-1-234-47-67

Mayer Brown LLP
700 Louisiana St., Suite 3400
Houston, Texas 77002
Attention: Pablo C. Ferrante
Telecopy: 713-238-4662

Covington & Burling LLP
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Attention: Miguel López Forastier

May 2, 2013

Morgan Stanley Trust, N.A.
Attn:  Brian Crossan
Harborside Financial Center
Plaza Two, 2nd Floor
Jersey City, NJ 07311
Fax: 201-830-6308
     201 633-4278

**Re:**   **Instructions to the Escrow Agent for Release of Portion of Indemnification Escrow Amount**

Reference is made to the Indemnification Escrow Agreement by and among Offshore Exploration and Production, LLC ("**Seller**"), Morgan Stanley Trust, N.A. ("**Escrow Agent**"), Korea National Oil Corporation ("**KNOC**") and Ecopetrol S.A. ("**Ecopetrol**", and together with KNOC, "**Purchaser**") (the "**Escrow Agreement**").

Pursuant to Seller's letter to the Escrow Agent and Purchaser dated May 2, 2013 and Section 3 of the Escrow Agreement, Seller hereby provides Instructions to the Escrow Agent to distribute the following cash amounts to Purchaser by wire transfer of immediately available funds within three (3) Business Days (or as soon as possible thereafter), from the Escrow Amount:

| | |
|---|---|
| Amount: | **$37,654,089.52** |
| To: | Korean National Oil Corporation |
| Bank: | Korea Exchange Bank, Pyeongchon Branch |
| Address: | 1588-14, Gwanyang-Dong, Dongan-Gu, Anyang, Gyeonggi-Do, Korea |
| Account #: | 337-JSD-100195-9   Swift Code:   KOEXKRSE |
| Reference: | Claim Notice 9, 10 & 14 – VAT Taxes |

| | |
|---|---|
| Amount: | **$37,654,089.52** |
| To: | Ecopetrol S.A. |
| Bank: | Citibank N.A. |
| Account #: | 36884135 |
| ABA Code: | 021000089   Swift Code:   CITIUS33 |
| Reference: | Claim Notice 9, 10 & 14 – VAT Taxes |

Signature page follows.

OFFSHORE EXPLORATION AND PRODUCTION, LLC

By: _____

Name: William Kallop

Title: President

# Exhibit

# C

$$MAYER \cdot BROWN$$

Mayer Brown LLP
700 Louisiana Street
Suite 3400
Houston, Texas 77002-2730

Main phone: +1 713 238 3000
Main fax: +1 713 238 4888
www.mayerbrown.com

**Facsimile cover sheet**

Date:          May 10, 2013
Total pages:   5, including cover
Matter:        10357386

**Pablo C. Ferrante**
Direct Tel +1 713 238 2662
Direct Fax +1 713 238 4662
pferrante@mayerbrown.com

| To: | | Company: | Fax: | Telephone: |
|---|---|---|---|---|
| | Atara Aharonovitz | Morgan Stanley Trust | +1-201-830-6308 | |
| cc: | William M. Kallop | Offshore International and Production, LLC | +1-713-622-3474 | +1-713-622-3474 |
| | Jack J. Langlois | DLA Piper LLP (USA) | 713-300-6019 | 713-425-8419 |
| | Brian Crossan | Morgan Stanley Private Bank | +1-201-633-4278 | |

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS BY MAIL. THANK YOU.

IF YOU HAVE ANY TRANSMISSION DIFFICULTY,
PLEASE CONTACT THE FACSIMILE DEPARTMENT AT +1 713 238 3000

Mayer Brown LLP operates in combination with our associated English limited liability partnership and Hong Kong partnership (and its associated entities in Asia) and is associated with Tauil & Chequer Advogados, a Brazilian law partnership.

**MESSAGE:**

See attached letter re: **Indemnification Escrow Agreement - Objection to Release from Indemnification Escrow Account**

700359374.6

VIA TELECOPY AND UPS

VIA TELECOPY AND UPS

May 10, 2013

Morgan Stanley Trust, N.A.
Harborside Financial Center
Plaza Two, 2nd Floor
Jersey City, NJ 07311
Attention: Atara Aharonovitz
Telecopy: (201) 830-6308

Re:   Indemnification Escrow Agreement
      Objection to Release from Indemnification Escrow Account

Gentlemen:

Reference is made to that certain (i) Stock Purchase Agreement (as amended, the "Agreement") dated as of December 29, 2008 by and among Offshore Exploration and Production, LLC ("Seller"), Korea National Oil Corporation ("KNOC") and Ecopetrol S.A. ("Ecopetrol", and together with KNOC, "Purchaser"), (ii) Indemnification Escrow Agreement (the "Escrow Agreement") dated as of February 5, 2009 by and among Purchaser, Seller, and Morgan Stanley Trust, N.A. as escrow agent thereunder ("Escrow Agent"), and (iii) Letter from Seller to Morgan Stanley Trust, N.A. ("Escrow Agent") dated as of May 2, 2013 ("Unilateral Release Instruction"). Capitalized terms used but not defined herein shall have the respective meaning set forth in the Agreement and the Escrow Agreement.

In the Unilateral Release Instruction, Seller purported to withdraw its objections to Purchaser's Claim Notices Nos. 9, 10 and 14 and to instruct Escrow Agent to release $75,308,179.03 to reimburse Purchaser for certain value added taxes ("VAT") paid by Savia Peru S.A. ("Savia").

Pursuant to Section 3 of the Escrow Agreement, where Seller has objected to a Claim Notice submitted by Purchaser, the Escrow Agent "shall not release additional funds from the Escrow Amount (other than quarterly distributions of interest in accordance with Section 2 hereof) **except in accordance with either (i) written instructions executed both by an authorized officer of Purchaser and by an authorized officer of Seller ("Joint Instructions"),** or (ii) a certificate delivered by any Purchaser to the Escrow Agent, executed by an authorized officer of such Purchaser (a "Final Award Certificate") ..." (Emphasis added.)

Section 8.6 of the Agreement between Purchaser and Seller provides, inter alia, that "Neither the exercise of nor the failure to exercise such right of set-off [against the Escrow Amount] will constitute an election of remedies or limit Purchaser in any manner in the enforcement of any other remedies that may be available to it."

The total claims asserted by Purchaser against the Escrow Agreement and still outstanding exceed $210 million (the "Unresolved Amount"), while the Escrow Amount

**Objection to Release from Indemnification Escrow Account**
Page 2

currently stands at only slightly below $125 million. Payment of the $75.3 million towards Savia's VAT proposed by Seller would accordingly deplete the Escrow Amount substantially below the Unresolved Amount, unduly prejudicing Purchaser.

By Interim Award dated as of April 16, 2013, the Arbitral Tribunal ordered Seller to "reimburse Purchaser" for the relevant tax payments on or before the 30th calendar day after issuance of the Award.

For the foregoing reasons, Purchaser declines to join in Seller's Unilateral Release Instruction. In the absence of a Joint Instruction as required by Section 3 of the Indemnification Escrow Agreement, the Escrow Agent is therefore precluded from releasing these funds, and Seller is required to comply with the Order of the Arbitration Tribunal by other means.

This letter should not be construed as an admission or consent, or as waiver or as an exclusive election of any right or remedy of Purchaser under the Agreement, the Escrow Agreement, the Interim Award, applicable law or otherwise, and Purchaser hereby reserves all of its rights thereunder.

If you have any questions regarding this matter, please do not hesitate to contact the undersigned. In any event, all communications concerning this matter should be directed to the appropriate Parties in accordance with the Escrow Agreement.

[Signature Page Follows]

Objection to Release from Indemnification Escrow Account
Page 3

Very truly yours,

Ecopetrol S.A.

By: _____
        Mr. Juan Carlos Mesa
        Attorney-in-Fact

CC:     Offshore Exploration and Production, LLC
        13430 Northwest Freeway (Hwy 290), Suite 800
        Houston, TX 77040
        Attention: William M. Kallop
        Telecopy: (713) 622-3474

        DLA Piper LLP (US)
        1000 Louisiana Street, Suite 2800
        Houston, Texas 77002-5005
        Attention: Jack J. Langlois
        Telecopy: (713) 300-6019

        Morgan Stanley Private Bank, N.A.
        522 Fifth Avenue, 12th Floor
        New York, NY 10036
        Attention: Brian Crossan
        Telecopy: (201) 633-4278

Objection to Release from Indemnification Escrow Account
Page 4

Very truly yours,

**Korea National Oil Corporation**

By: _____

Mr. Byeong Il Kim
Attorney-in-Fact

CC:   Offshore Exploration and Production, LLC
      13430 Northwest Freeway (Hwy 290), Suite 800
      Houston, TX 77040
      Attention: William M. Kallop
      Telecopy: (713) 622-3474

      DLA Piper LLP (US)
      1000 Louisiana Street, Suite 2800
      Houston, Texas 77002-5005
      Attention: Jack J. Langlois
      Telecopy: (713) 300-6019

      Morgan Stanley Private Bank, N.A.
      522 Fifth Avenue, 12th Floor
      New York, NY 10036
      Attention: Brian Crossan
      Telecopy: (201) 633-4278

# Exhibit

# D

## Offshore Exploration and Production, LLC
## 13430 Northwest Freeway (Hwy 290), Suite 800
## Houston, TX 77040

May 21, 2013

Morgan Stanley Trust, N.A.
Attn: Donna Flagg / Kevin Gallagher
Harborside Financial Center
Plaza Two, 2nd Floor
Jersey City, NJ 07311
Fax: 201-830-6308
201 633-4278

Re:   **Purchaser's Indemnification Claims No. 9, 10 and 14**
      **VAT Tax Credit Contingency for Tax Years 2002, 2004, 2005, 2006 and 2007**
      <u>**Consent to Release from Indemnification Escrow Amount**</u>

Ladies and Gentlemen,

We refer to (a) Offshore Exploration and Production, LLC ("**Seller**")'s May 2, 2013 letter to Morgan Stanley Trust, N.A. (the "**Escrow Agent**") (such letter, "**Seller's Consent to Release**"); (b) the May 10, 2013 response by Ecopetrol S.A. ("**Ecopetrol**") and Korea National Oil Corporation ("**KNOC**") (collectively "**Purchaser**") (such response, "**Purchaser's Objection to Release**"); and (c) the Indemnification Escrow Agreement (the "**Escrow Agreement**") dated February 5, 2009 by and among Seller, Purchaser and the Escrow Agent.[1]

In Seller's Consent to Release, Seller instructed the Escrow Agent to release promptly to Purchaser from the Escrow Amount the sum of $75,308,179.03 to reimburse Purchaser for VAT paid by Savia. In Purchaser's Objection to Release, Purchaser argued that, "[i]n the absence of a Joint Instruction as required by Section 3 of the Indemnification Escrow Agreement, the Escrow Agent is therefore precluded from releasing these funds ..." Purchaser's objection to the release of the subject funds by the Escrow Agent is meritless under the provisions of the Escrow Agreement. To the contrary, Escrow Agent has a mandatory obligation to promptly release the subject funds to Purchaser under the express provisions of the Escrow Agreement.

In relevant part, Section 3 of the Escrow Agreement provides as follows:

"The Escrow Agent shall transfer to Purchaser funds from the Escrow Amount in an amount equal to the amount claimed in the Purchaser's Indemnity Certificate, but not contested in Seller' Indemnity Certificate, and shall not release additional funds from the Escrow Amount (other than quarterly distributions of interest in accordance with Section 2 hereof) except in accordance with either (i) written instructions executed both by an authorized officer of Purchaser and by an

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Escrow Agreement or Seller's Consent to Release, as applicable.

authorized officer of Seller (**"Joint Instructions"**), or (ii) a certificate delivered by any Purchaser to the Escrow Agent, executed by an authorized officer of such Purchaser (a **"Final Award Certificate"**), which certificate shall ... "

According to the Escrow Agreement, these provisions of Section 3 are both determinative and dispositive regarding the release of Escrow Amounts to Purchaser.

Seller's Consent to Release made it abundantly clear that Seller did not contest or object to the release of $75,308,179.03 from the Escrow Amount to Purchaser. Under the provisions of Article 3 of the Escrow Agreement cited above, it became the mandatory obligation of the Escrow Agent to release said amount of funds to Purchaser, forthwith. As can plainly be seen according to the above cited provisions of Article 3, no "Joint Instructions" are required for Escrow Agent to perform its mandatory obligation to release the said amount of uncontested funds to Purchaser.

<u>Other Grounds</u>

Purchaser cites three other grounds why the Escrow Agent should not release the funds. However, only Section 3 of the Escrow Agreement is relevant to the obligations of the Escrow Agent. Purchaser's other cited grounds are not contemplated in the Escrow Agreement and do not affect or bind the Escrow Agent's obligations thereunder.

First, Purchaser's Objection to Release recites that under Section 8.6 of the Stock Purchase Agreement between Purchaser and Seller, which is entitled "Escrow; Right of Set-off", "[n]either the exercise of nor the failure to exercise such right of set-off [against the Escrow Amount] will constitute an election of remedies or limit Purchaser in any manner in the enforcement of any other remedies that may be available to it." This provision is not in conflict in any manner with the provisions of the Escrow Agreement, nor in conflict with the obligations of the Escrow Agent.

Second, Purchaser's Objection to Release further complains that the present outstanding Escrow Amount is too low. This is also irrelevant to the Escrow Agent's obligations, and furthermore the original Escrow Amount, all of the provisions of the Stock Purchase Agreement relating to escrow matters, and the entire Escrow Agreement itself were all thoroughly negotiated and finally agreed between the Parties as executed.

Third, Purchaser references the arbitral Interim Award. Seller duly notes the Interim Award issued by a panel of arbitrators on April 25, 2013 under the provisions of Section 10.7 of the Stock Purchase Agreement. This award does not preclude Seller from exercising its legal rights under the provisions of the Escrow Agreement. According to Section 12 of the Escrow Agreement, it is provided:

i) "This Indemnification Escrow Agreement shall be governed by and construed under the laws of the State of New York."

ii) "Each Party...consents to the jurisdiction of the courts located in the State of New York."

iii) "In the event of any discrepancy or inconsistency between the provisions of this Indemnification Escrow Agreement and the provisions of the Stock Purchase Agreement, the provisions hereof shall prevail and be deemed to reflect the intent and understanding of the Parties hereto."

Accordingly, Seller hereby restates its directive to Escrow Agent in Seller's Consent to Release dated May 2, 2013 that Escrow Agent cause an immediate release of $75,304,179.03 to Purchaser. Under the provisions of the Escrow Agreement, Purchaser has provided no legitimate grounds for Escrow Agent not to release the said amount of funds to Purchaser. Under the provisions of the Escrow Agreement, Escrow Agent is under the mandatory obligation to release said amount of uncontested funds to Purchaser, and Section 3 of Escrow Agreement affords Escrow Agent no discretion not to release the said amount of uncontested funds.

By copy of this letter to Purchaser, Seller hereby notifies Purchaser that it has tendered full satisfaction of the Interim Award. If Purchaser continues to obstruct the performance of Escrow Agent in the discharge of its responsibilities under the Escrow Agreement, Seller will hold Purchaser fully responsible for all damages Seller may sustain as a result.

\*          \*          \*

Except for the matters expressly addressed herein, this letter shall not be construed as an admission of any fact or circumstance. Seller reserves the right to amend or supplement this letter as new facts are learned or disclosed. If you have any questions regarding the content of this letter, please reply to the undersigned in accordance with the Escrow Agreement.

*[Signature page follows]*

Sincerely,

William Kallop
President, Offshore Exploration and Production, LLC


cc:

Korea National Oil Corporation
1588-14 Gwanyang-dong, Dongan-gu
Anyang, Gyeonggi-do, Korea 431-711
Attention: Jae Soo Choi
Telecopy: +82-31-385-2476

Ecopetrol S.A.
Calle 37 No. 8-43
Piso 7
Edificio Guadalupe
Bogota, D.C. -- Colombia
Attention: Maria Victoria Riaño and/or Oscar Bravo
Telecopy: +57-1-234-47-67

Mayer Brown LLP
700 Louisiana St., Suite 3400
Houston, Texas 77002
Attention: Pablo C. Ferrante
Telecopy: 713-238-4662

Covington & Burling LLP
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Attention: Miguel López Forastier